and Seagal Chadha on behalf of Calvary Chapel Lone Mountain. As I'm coming off of the previous arguments by my predecessors and Mr. Newby, what I'd like to do is I'd like to defer to the bench because this is not only a hot topic but a hot bench and if the court would like to re-ask certain questions that were done in Dayton, I'd be more than happy to answer. I'd like to start off with what we finished up with before. I think your chapel is in a more remote area, is it not? Or perhaps I got them backwards. You got them backwards. You're right in Las Vegas area. Right, I am in Las Vegas. We have a 700 person fire code capacity in Las Vegas. Okay, so let's assume for a moment that based on Roman Catholic Diocese that the regulation in 21 doesn't fly because it treats religion differently. We have to have strict scrutiny here, but in the meantime, before we send this back to the district court, we have to do something. What should we do? Do we issue an injunction with respect to 21 to establish principles and if so, what should those principles be? Okay, so if we look at Roman Catholic Diocese, remember that in Roman Catholic Diocese prior to the Supreme Court hearing Roman Catholic Diocese, Cuomo actually changed the red zones, orange zones, and they were now yellow zones. Just like in this case where a month and a half ago, or I'm sorry, back in September, Governor actually modified the ability of people to go to places of worship and up that cap to 250 people. The state then filed a motion to dismiss saying that the matter was moot. At that time, this court ruled that the matter is not moot and cannot be moot. So when we're looking at whether it is Directive 21 or 35, what Calvary Chapel, Lone Mountain is seeking is equal footing with whatever that directive is. Now, Calvary Chapel, because we have a fire code percentage of, I'm sorry, a fire code capacity of 700 people, then whether if it's 25% of 700 people, then that is the capacity that we'd request. If it was 50% of 700 people, that would have been more than the 250 person cap allocated and actually removed just three weeks ago. Counsel, so in your case, as opposed to the previous one, the hard caps really bite, which the 50% of the 50 doesn't bite quite as much for the other one. Correct. And in your case, I think what you just said was, you would be willing to live with the percentage caps that the casinos and restaurants live with. Correct. And yes, that is accurate. And one of the issues that we have is, as the state has provided in the previous argument, bars and restaurants are allowed to watch a football game in a bar and be in a bar eating, drinking, smoking, because mind you, Nevada still has smoking in bars, and be there for two and a half hours, okay, watching a football game. But you can't go to church and I will present to the court that Calvary services are a lot shorter than football games. Counsel, so I have in front of me your supplemental brief where you, in your supplemental excerpts, you brought to our attention Order 35. But the punchline of your supplemental brief is, appellants request this court reverse the district court's decision denying Calvary Chapel Lone Mountains preliminary injunction and remand all further proceedings accordingly therewith. Is that still the relief? And this was dated a few days ago. Is that still the relief you're seeking? That is, at a minimum, the relief that we are seeking. A remand in the event that this court does not follow Roman Catholic diocese and do a straight reversal. I'm sorry, go ahead, Judge Bennett. I was just gonna say, and I'm sure I heard you correctly, but in terms of if there is going to be a remand, the interim relief that your client would be satisfied for with would be basically, in Directive 35, removing the lesser of, so that you could do 25%. Correct. That is correct. I think we've lost your connection. My connection? No, no, no, not to you, Judge Bennett. Am I still here? Now you are. Now you're back. Go ahead. Do you have another question? No. Okay. Does anyone else have any other questions? Well, let me ask you this. I gather that in the injunction that we're talking about, you would want the court to say that because of the difference in the worship and these secular institutions, that we apply a strict scrutiny and that we send it back to the district court to evaluate under strict scrutiny. Is that fair to say? Yes, that is fair to say. And one of the differences between Calvary Chapel, Lone Mountain, and Calvary Chapel, Dayton Valley, is the cusp of our argument is really on the basis of equal protection. And this is something that both Justice Kavanaugh in Roman Catholic Diocese and in fact, Justice O'Scanlan in Harvest Rock Church addressed. Because as I watched the oral arguments in Harvest Rock Church yesterday after the trial, was that at the end of the day, what the justices that were questioning counsels in Harvest Rock was, what is the focal point of the issue with all these directives? And the focal point is really risk of transmission. The risk of transmission of the disease is what we are looking at when we're looking at these caps. And I think when we look at the risk of transmission, this is when we can get into these discussions with the district court, if this matter is remanded to the district court, because the risk of transmission is no less in a casino or like I said, in a bar watching a football game for two and a half hours. One of the counsel, one of the other focal points that I took from the Supreme Court's decision is that judges, especially appellate judges, are not in a good position to make scientific judgments that affect the lives, health and safety of our citizens, especially in an environment where the data is changing every day. It's dynamic. The COVID spread and deaths is changing every day. And what we're looking at here is a record that was made six months ago. Correct. And to address that, in fact, Justice Roberts in South Bay had made that distinction that because again, and South Bay was determined seven months ago, we are now 10 months in a pandemic where Justice Roberts in stating that judges are not the proper arbiters to determine what these medical requirements would be because of the fact that risk of transmission, one of the things that Justice Roberts said was that risk of transmission is a lot lower in laundromats, supermarkets, so on and so forth in South Bay. Now, 10 months after the data is, whether it's there or not there, when we look at South Bay and we look at Harvest Rock Church, one of the issues that we do have to address is the fact that 10 months into a pandemic, these are no longer emergency directives. These are now standards. And this is what Justice Gorsuch and Justice Kavanaugh both address in Roman Catholic Diocese. Well, if I could take you back to what it is that you want from this court right now, you said a remand. But would we also do something that would give your church relief right now and up to with the general instructions favorable to you, but that would still go back to the district court to craft an injunction? At this juncture, what we would like is a reversal of Judge Bulwer's order and allow for the equal footing, which would be under Directive 35, 25 percent of the church's capacity. OK, so is that similar to what your colleague in the earlier case, when I pushed him, that seemed to be what he was willing to go with? I think he was, but I think he was using Directive 50. I'm sorry, Directive 21, which was based on 50 percent. Now, I distinguish our position as we are willing to go with the 25 percent capacity that is present on bars. And you would like us to give an injunction to that effect right now, not just wait. OK, let me ask you this, though. We have jurisdiction over this case. It is not moot because we're hearing about 21, just like the Supreme Court in the Roman Catholic Diocese case was hearing argument about an ordinance, a regulation that had already been changed by the governor of New York. Are we in a position to opine about 35 because it's not really before us? Or rather, are we in a situation where we can rule on 21 and establish principles that then the district court could apply to any future directives that come down that may be different? If I understand your question correctly, I believe that you could rule on 21 as it stands today because you do have jurisdiction and that is the executive order that is before you today. As to 35, I think that you can give an advisory opinion on the basis of the fact that our argument, remember Lone Mountain's argument to distinguish Dayton Valley is an equal protection argument under the 14th Amendment. I understand. But I guess what I'm saying is if 35 is not before us, but let's just say, pick out a number. We would say that we find that a discrimination between houses of worship and casinos and a few other things is a violation of the free exercise clause. It is under strict scrutiny. It is illegal. Anytime the state applies these regulations in a way that creates a similar, we've got to describe what the problem would be. That would also be illegal. And then the people could take that teaching, move it to 35 or whatever else it is. But I don't see how we can get to 35 unless there is a, we can't give advisory opinions as you probably know. Yes. Well, what we could do is you could set the standard looking at 21 and if you use 21 as setting the standard for equal protection using whether it's a 25 percent or whether it's a 50 percent, what you could do is you could use that as the basis to apply, whether it's 35. Like I said, three weeks ago, we had 250 people. And before that, it was 50 people, but a 50 percent capacity. So if you use 21 as a standard, what that could be is almost like a blueprint. If you allow 25 percent capacity or 35 percent or 50 percent capacity, churches or places of worship have to have that same capacity. Okay. Now you don't have much time left. Do you want any rebuttal time? I would like to reserve the rest of my time. Okay. Not much. We'll maybe give you some more. So let's go back down, Mr. Newby, on behalf of the governor. Thank you. For the record, Craig Newby, Deputy Solicitor General for the state of Nevada, representing, representing appellees in this case. Technical notes, everyone's screen has been frozen on my view of the Zoom meeting, including the courtroom clock, which froze at about 240 something. I could hear the court and its questioning of my esteemed colleague, but I couldn't. There, everyone is frozen, including myself on my screen. Okay. We'll ask, maybe we'll, we'll have my judicial assistant call Kwame Copeland and see what he can do in the meantime, but go ahead. Okay. And thank you, Your Honor. As was noted at the conclusion of the last argument, this was going to be a continuation of the discussion of the governor's actions regarding emergency directives. And just so it's clear on this record, to the extent necessary, I'd note that the state has already addressed numerous questions in the related case of Calvary Chapel, Dayton Valley. With that, rather than me starting with a presentation as remarkably the same as what was offered before, I would ask if the court has any additional questions. Counsel, this is Judge Boggs, if you can't see me. If I can ask a doctrinal question, we've been very specific here about the rules, but is it your position that all of these should simply, all of these restrictions should simply be subject to rational basis? Review across the board, or would you concede heightened review for anything? The decision about whether there is rational basis review is dependent on the conclusion as to whether these restrictions that pertain to religious services are generally neutral with regards to religion relative to secular activities. How can you say they are when they're named by name with different numbers? In other words, your underlying idea that religious services can spread the virus and so forth has a great deal of merit to it, which would justify having some kind of overarching category. But when you begin with a regulation that names houses of worship as a particular category and comes up with different numbers, rather than saying houses of worship are like something else, how can you say it's neutral or generally applicable? Judge, I think we've just lost Mr. Newby. Oh, I know we better. We'll hold to getting back. Okay. Sounds good. I'll call him. Oh, well, stand by. Maybe the Lord. Judge Smith. This is Bonnie. Do you want me to announce a quick recess? We can do that. What do you need? Five minutes? Calling now. Five minutes would probably work. Okay. Okay. The court stands in recess for five minutes. This court stands in recess for five minutes. This court stands in recess for five minutes. This court stands in recess for five minutes. All right, Mr. Newby. Looks like we have you again. Thank you. Have me. I can see Judge Smith on my screen. People are returning. All right. Did you lose me before I began my discursive question or in the middle of it? I heard your question, Your Honor, but just to make certain I heard it correctly. Before we go forward here, we're waiting for Judge Bennett to come back. He thinks we're still on recess. So just hold them all. Here he is right here. All right. I think everyone's back. So please, please proceed then. I will certainly attempt to proceed now. If I recall what the correction was before engaging in technical issues, it was in terms of the per person cap and whether this is what would makes this subject to rational basis review. And not just the number, but that when you call, when you have a category that calls out houses of worship by name and then has different rules, how can you say that it's neutral and generally applicable? If you, if you said houses of worship are part of the same category as bars, restaurants, museums, or something, you'd have an argument. But when you call, you know, Smith and any of those cases were at least facially treated everyone the same. How can you say that it's neutral and generally applicable? Your Honor, first, simply naming religious services does not in and of itself make the provision not generally applicable. These directives are intended to be guidance to the general public. So they understand what they can and can't do during this, during this pandemic. So their attempt to be prescriptive, prescriptive to them. To the district court as found with directive 21, which is the challenge directive here. Numerous other provisions had the same lesser of 50% or 50% occupancy such as movie, movie theaters, such as museums, art galleries, trade schools, and technical schools. The activity most comparable arguably to religious services, live entertainment under directive 21 were prohibited in its entirety. No audiences, no participation whatsoever. And so that is part of what in terms of considering the totality of the regulations, the district court determined that there was, there was these, these things were neutral. I do understand this court's skepticism on that having been through the original oral argument as well. Well, counsel, it's, I think it's really more than skepticism. I think the Supreme Court has made it very clear in the diocese case that when you treat entities like bike repair shops and liquor stores and the like far more favorably than houses of worship, that you're not meeting the applicable first amendment tests. Whether we're looking at 21 or 35, I mean, you are treating all retail far more favorably than houses of worship and under 35 it's all non-retail and outdoor venues as well. And I just don't see that with the guidance we've gotten from the directive we've gotten from the Supreme Court that that can possibly be justified. No, you didn't lose me. I was wondering if there, I was wondering if there is a question. Well, how can it be justified? It can be such a limit. In light of what the Supreme Court has told us. I think there's, I think what the Supreme Court has told us in Roman Catholic as addressed in Harvest Rock Church is that New York's restrictions at issue in Roman Catholic are much more severe than those previously addressed by the Supreme Court in this case directed to 21 as well as California's restrictions. If I can push back against that just for a minute, or at least ask you, it is clear that in an absolute sense, the red and orange zones, 10 and 25 are more severe, but the Supreme Court dropped it back to the yellow zone, which is rather less severe. So wasn't that more of a passing comment than a, than a statement of law? First, the Supreme Court in the per curiam decision and in multiple supporting opinions identified that the restrictions are much, much less severe. And I think this court should take the Supreme Court at its word when it says that. And I think the way we take it at its word based on these circumstances is how they've chosen to treat California's restrictions where there are literally no indoor religious services are allowed. Well, wait a minute, wait a minute. The Supreme Court just sent back the Harvest Rock case. Doesn't that undercut your argument that the alleged severity differences is the controlling issue here? I mean, I get your point about the footnote too, but it seems to me what they're saying is that you cannot, because it's constitutionally protected, you cannot treat houses of worship differently, less advantageously than you do retail businesses and casinos and the like, because it's a violation of the first amendment. And they said that when you do that, you have heightened scrutiny. I mean, restrict scrutiny rather in this case, the district court, of course, thinking that the court would be controlled by Smith applied rational basis. We have a whole different situation here. Do we not? Your honor, I respectfully disagree to the extent that first we have, we first, we have a different fact situation in terms of just looking at the nature of what the Harvest Rock restrictions are, which is virtually for almost all California citizens. They are absolutely prohibited from indoor religious services at the moment, which would be very easy to consider in terms of if you could just consider on papers as a reviewing court to decide this is different than some other life activity, ergo, it must be struck down. That's not what the Supreme court did in that case. Instead, it remanded it with instructions to this court to remand it to the district court. What is the district court been instructed to do? Consider this in light of Cuomo and what it in light of Roman Catholic and what it says. And in the context of considering what it says, it would be to both do this light versus light comparison and to see whether under the standard articulated in Roman Catholic in terms of strict scrutiny, whether the state can, can articulate it, how this is narrowly tailored to address the obviously compelling interest of addressing COVID-19. The Supreme court itself did not have the answers to that question as a reviewing court. And respectfully, in this case, I would submit that this court is not positioned as a reviewing court to come to the definitive conclusion as to what the ultimate analysis would be in terms of the likelihood of success on the merits, which is what the Roman Catholic decision goes to on this issue, as well as weighing the other injunctive relief factors for, for either of the Calvary Chapel cases. Well, I think as I look at the per curiam opinion at the bottom of page two, the court refers to the fact that the factories and schools contributed to the COVID-19, but they're treated less harshly than the diocese churches and the synagogue. And then he said, because the challenge regulations are not neutral and of general applicability, they must satisfy strict scrutiny. And this means that they must be narrowly tailored to serve a compelling state interest. So I guess my question to you is, are we not in that situation here where the casinos, for example, are being treated differently, more advantageously than the houses of worship? So if we send it back to the district court, would we not say we apply strict scrutiny? And the state has to justify whether what it is doing is the least rather, you know, using the language that the court here is the most narrowly tailored. Isn't that what we're dealing with here? Your honor, I'm not going to repeat the, what the district court held with regards to casinos subject to the overall emergency directive regulation to the extent that repeating that argument. Cause that, that, that doesn't help you. We've covered that. And should the court disagree with, find that it was an abuse of discretion by the district court to issue the ruling that it did in June without prejudice. The next appropriate step would be for remand the district court pursuant to the Roman Catholic decision and to let the court determine whether the state can meet its burden under strict scrutiny in this case, and to allow it to see if it can meet its burden in terms of this is narrowly tailored to address this. And to the extent that this case is on a different procedural posture than what Roman Catholic was without having had any sort of evidentiary hearing or witness testimony or things of that sort, that would be an appropriate step to let a court, a court that takes evidence on a regular basis. Have this hearing, be able to conduct it on an expedited expedited basis. Should this court decide to do that and let and see whether the state can meet this burden under the new task. We simply haven't had an opportunity to do this. And this is a, this is a new case that's arisen since Rose just Thanksgiving week. And what do we do in the meantime? Well, I mean, the spring court at first barred the imposition of the 10 and 25 limit. What do we do in this case with respect to directive 21? Let's just say hypothetically, we send it back to the district court and tell the district court to apply strict scrutiny. You have your hearings and the like. But in the meantime, do we bar anything coming out of 21 just like the Supreme Court did in connection with the red zone? Your honor, directive 21 has been terminated by the subsequent, by the subsequent order. So that's not, I'm talking about the conditions within that. So, I mean, the specific limitations. I think that that would be difficult to specifically craft what that relief is because it could, we are in uncertain health times. That's something that's been consistent about the Supreme Court's decisions on these preliminary injunction issues. And this court's consideration of those issues, which is we, I cannot stand here as counsel knowing what the health conditions are going to be in the state. Two, three months, two, three weeks from now, at this point, in terms of whether the way to address this sameness issue is to adopt, to remove the per person cap or to go in the different direction. Should health causes warrant it to push back and say there needs to be a per person cap on all sorts of activities in terms of vaccine, further restrictions akin to what California apparently has done on religion. Okay. Now we have, you've reached your time limit. Let me ask my colleague whether either has questions for Mr. Newby at this point. Okay. Judge Boggs, do you have any? Good. Okay. Very well. So I think Ms. Shaza, you have a little bit of time left. Would you like to use that? Sure. I'd like to defer to the court for any further questioning before I go into that. Does anybody have any points of clarification? Okay. So what I'd like to do is, first of all, let's go back to seven months ago where Justice Roberts had recommended or opined that judges should really exercise restraint on these gubernatorial directives and not issue opinions on these gubernatorial directives. At that time, most of the decisions that were filtering their way up through the circuits were one month to six weeks post pandemic and the beginning of the pandemic. At this time, we are 10 months post pandemic and now one of the things that we see come out of Roman Catholic Diocese is that the Supreme Court is now saying, now's the time to get involved. Now's the time for you guys to exercise that judicial review and lock down and clamp down on these arbitrary executive directors that vary from state to state. Brooklyn had 10 people, 25 people. Chula Vista has 100 people. Nevada, Las Vegas has 50 people. These are arbitrary numbers and now's the time for the courts to start exercising that judicial review. Okay. Any other questions by my colleagues? If not, well, we thank both counsel for your argument. These are, of course, very important, interesting cases, and we appreciate your contribution toward our decision making. So the case just argued is submitted and the court stands adjourned for the day. Your Honor. This court for this session stands adjourned.
judges: Boggs, M. Smith, Bennett